**Hiram HERNANDEZ, Jr., Plaintiff,**

v.

**CITY OF ROCHESTER, et al., Defendants.**

No. 00–CV–6263L.

United States District Court, W.D. New York.

April 30, 2003.

---

Nira T. Kermisch, Rochester, NY, for Plaintiff.

Paul D. MacAulay, Rochester, NY, for Defendant.

### DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Hiram Hernandez, Jr., commenced this action in New York State Supreme Court, Monroe County, on May 17, 2000. Defendants, the City of Rochester ("the City") and Edmond Bernabei, removed the action to this Court on June 9, 2000, pursuant to the Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendants have moved for summary judgment.

### FACTUAL BACKGROUND

On the evening of February 6, 1999, defendant Bernabei, an officer in the Rochester Police Department, was assigned to engage in covert surveillance of the intersection of Bay and Rohr Streets in Rochester for the purpose of detecting and interdicting drug activity. The area around that intersection was known to be the scene of frequent drug sales. Officer Bernabei and another officer, Sergeant Mark Beaudrault, both of whom were in uniform, were seated in an unmarked vehicle parked on Hebard Street, from which they had a clear view of the intersection.

Officer Bernabei states in an affidavit[1] that he saw a number of people standing and sitting in front of a grocery store at the intersection. One of those people was the plaintiff, who was standing with another man, later identified as Augustine Ocasio.

Officer Bernabei states that over a period of about twenty minutes, he observed several individuals walk up to plaintiff and Ocasio, and then walk with them around the corner to a driveway. When they

---

**1.** The affidavit is attached to defendants' notice of motion (Docket # 8).

reached the driveway, plaintiff and Ocasio would walk up the driveway (leaving the other individuals standing on the sidewalk), disappearing from Bernabei's view for a short time. When they reappeared at the end of the driveway, plaintiff and Ocasio would engage in what appeared to be a transaction of some sort with the person who had accompanied them, and then reposition themselves in front of the store. The officers saw several exchanges like this during that brief time frame.

Although the officers were too far away to observe precisely what was being exchanged during these encounters, Officer Bernabei states that based upon his training and experience, and his knowledge that the location was an area of frequent drug activity, he believed that plaintiff's and Ocasio's actions were consistent with the sale of drugs to individual customers.

At about 9:15 p.m., after watching another such exchange, the officers decided that plaintiff and Ocasio would be stopped. They radioed two other uniformed officers, Rene Cruz and Virgil Ross, who were in a marked police car nearby, directing them to intercept the two men.

At the same time, Bernabei and Beaudrault drove the short distance to where plaintiff and Ocasio had once again emerged from the driveway on the west side of Rohr Street. As the officers' vehicle approached the two men, plaintiff suddenly crossed to the opposite (east) side of the street, while Ocasio stayed on the west side of the street.

By this time, Officers Cruz and Ross had arrived on the scene. When all four officers had gotten out of their cars, Bernabei directed Cruz and Ross to stop plaintiff. Bernabei and Beaudrault walked over to Ocasio, who appeared to have something in his mouth. Sergeant Beaudrault instructed him to spit out whatever was in his mouth. Ocasio did so, spitting out six plastic bags containing what appeared to be, and was later determined to be, cocaine.

The officers placed Ocasio under arrest. Officer Bernabei then briefed Cruz and Ross on what they had observed, telling them "in sum and substance" that Ocasio and plaintiff "were involved in drug transactions." Bernabei Deposition Transcript [2] at 59. Officers Cruz and Ross then arrested plaintiff on a charge of Loitering in the First Degree, in violation of N.Y. Penal L. § 240.36.[3] No drugs were found on plaintiff.

Plaintiff tells a different story. He states in his affidavit (Docket # 12) that on the evening in question, he had picked up his girlfriend and their children, and had taken them to his parents' house on Bay Street. Plaintiff's mother was going to babysit the children while plaintiff and his girlfriend went to the movies.

After dropping off the children and their mother in front of his parents' house, plaintiff parked his car on Rohr Street. He then saw Ocasio, whom he knew, and some other persons standing on the corner. Plaintiff walked over and began talking to Ocasio about a common friend of theirs who had been shot a day or two earlier.

As plaintiff and Ocasio talked, they began walking down the street. At some point, they turned around and began walking back, towards plaintiff's parents'

---

2. A portion of the transcript has been submitted as an unmarked exhibit.

3. § 240.36 Loitering in the first degree
 A person is guilty of loitering in the first degree when he loiters or remains in any place with one or more persons for the purpose of unlawfully using or possessing a controlled substance, as defined in section 220.00 of this chapter. Loitering in the first degree is a class B misdemeanor.

house. As they did so, an unmarked police car pulled up, and Bernabei and Beaudrault got out and grabbed Ocasio. Plaintiff states that since the officers did not approach him or say anything to him, he continued walking toward his parents' house. At that point, a marked police car arrived, and the two officers in that car got out and asked plaintiff for identification. Plaintiff gave the officers his driver's license, and they told him to wait inside the police car. A short time later, the officers arrested plaintiff.

Plaintiff was taken to jail, where he remained for about seven hours before bail was posted for him. On May 17, 1999, the charges against him were dismissed, upon the motion of plaintiff's then-attorney, by Rochester City Court Judge Teresa D. Johnson. Although Judge Johnson neither issued a written decision nor stated her reasons for granting the motion to dismiss, the basis for the motion was that "[t]he allegations contained in the accusatory instrument do not support by non-hearsay allegations each and every element of the crime charged." Hernandez Aff. Ex. A, at 2. After noting that plaintiff was not found in possession of any drugs, and stating that Ocasio "apparently was not selling the drug ..., but rather was in possession of it ...," [4] plaintiff stated in his motion to dismiss that "the fact a citizen happens to be on a street corner in the area of another individual who happens to possess cocaine does not form a probable‧ cause or reasonable basis to charge loiter-

ing against each and every citizen who happens to be within ten to twenty feet of the individual in possession of drugs." Id. at 2–3. Plaintiff also asserted that "there [wa]s no lab report" or other evidence indicating that the substance that Ocasio possessed was in fact cocaine. Id. at 3.[5]

As stated, plaintiff filed the complaint in this action in state court in May 2000. Although the complaint does not cite 42 U.S.C. § 1983, it does allege violations of plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. I therefore treat it as an action under § 1983, which provides a remedy for any person whose constitutional rights have been violated by anyone acting under color of state law. See Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

The first and second causes of action assert claims for false arrest against Officer Bernabei and the City, respectively. The third cause of action, which is brought against both defendants, asserts a malicious prosecution claim. The fourth cause of action seeks punitive damages against Bernabei on the malicious prosecution claim. Plaintiff seeks an unspecified amount of damages.

## DISCUSSION

### I. False Arrest Claims

■ To prove the elements of a false arrest claim under § 1983, plaintiff must

---

**4.** The basis for the assertion that Ocasio was "apparently" not selling drugs was a plea agreement entered into by Ocasio. Hernandez Aff. Ex. A, at 2.

**5.** At oral argument on the motion to dismiss in city court, plaintiff's then-attorney repeated these arguments, stating, "the major issue here is the sufficiency of the accusatory instrument," that "[t]here [wa]s no basis to arrest" plaintiff, and that "the accusatory instrument [wa]s insufficient to support the

charges contained therein based on what somebody else was doing who happened to be in the area with [plaintiff] at the time the police saw fit to stop anyone and everyone who was on the street corner." Transcript, *People v. Hernandez,* No. 99–02351 (N.Y. City Ct., Monroe Co. May 17, 1999), at 2–3. After the prosecution declared that it would rest on its papers, Judge Johnson stated, "The motion to dismiss is granted," without elaboration. Transcript at 3.

show that: (1) defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994); *Donovan v. Briggs,* 250 F.Supp.2d 242, 249 (W.D.N.Y. 2003).

In the case at bar, only the last element is in dispute. Plaintiff asserts that he was arrested without probable cause. Defendants contend that Officer Bernabei was justified in directing Officers Cruz and Ross to stop plaintiff, based on Bernabei's reasonable suspicion that plaintiff was engaged in unlawful activity, and that the discovery that Ocasio was in possession of drugs, combined with all the surrounding circumstances, gave rise to probable cause to arrest plaintiff for loitering.[6]

■ "An arrest made on probable cause is privileged, and probable cause exists 'when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *Shain v. Ellison,* 273 F.3d 56, 67–68 (2d Cir.2001) (quoting *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996)), *cert. denied,* —— U.S. ——, 123 S.Ct. 672, 154 L.Ed.2d 582 (2002). "The existence of probable cause to arrest constitutes justification [for the confinement] and is a complete defense to an action for false arrest." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (citation and internal quotation marks omitted).

■ Probable cause is not required in order to justify a brief, investigatory stop of a person, however. The Supreme Court has held that an officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable

---

**6.** Defendants contend that in a § 1983 action, the plaintiff bears the burden of establishing lack of probable cause. Plaintiff disputes that assertion.

Although the Second Circuit has stated that a § 1983 plaintiff claiming false arrest "must show" that his confinement was not privileged, *see Bernard,* 25 F.3d at 102; *see also Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (plaintiff "must show" that defendant confined him without justification), the court in *Raysor v. Port Auth. of New York and New Jersey,* 768 F.2d 34, 40 (2d Cir.1985), *cert. denied,* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986), expressly held that "a deprivation of liberty without 'reasonable cause' is a section 1983 violation as to which the defendant bears the burden of proving reasonableness ...." The court also stated that a "tort action against ... police officers for false arrest [under New York law] is ... substantially the same as [a] section 1983 action." *Id.* at 39–40. Under New York law, the court stated, a "warrantless arrest is presumptively unlawful; the plaintiff need not prove either malice or want of probable cause. Rather, the defendant has the burden of proving that the arrest was authorized under N.Y.Crim. Proc. Law § 140.10 (McKinney 1981), which requires 'reasonable cause,' the equivalent of probable cause, *see id.* Practice Commentary at 177." *Id.* at 40 (citations omitted).

Given this unequivocal statement by the Second Circuit, which subsequent cases have not called into doubt, I conclude that defendants here have the burden of showing that plaintiff's arrest was privileged, which they may do by showing the existence of probable cause. *See Mason v. Town of New Paltz Police Dep't,* 103 F.Supp.2d 562, 565 (N.D.N.Y.2000) ("Federal and New York cases uniformly hold that where, as here, an arrest or imprisonment is extrajudicial, that is, without legal process, the burden is on defendant to prove justification"); *Universal Calvary Church v. City of New York,* 2000 WL 1538019, *5 (S.D.N.Y. Oct.17, 2000) ("The burden of establishing the existence of probable cause for an arrest is on the Defendants"); *Crosby v. Hare,* 932 F.Supp. 490, 493 (W.D.N.Y.1996) ("The defendant in a § 1983 action has the burden of proving that his actions were reasonable, which is essentially the same as the defendant's burden of proving that the arrest was authorized as a defense to a tort action").

suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also Ornelas v. United States*, 517 U.S. 690, 692, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) ("An investigatory stop is permissible under the Fourth Amendment if supported by reasonable suspicion"); *United States v. Bayless*, 201 F.3d 116, 132–33 (2d Cir.), *cert. denied*, 529 U.S. 1061, 120 S.Ct. 1571, 146 L.Ed.2d 474 (2000).

 "Reasonable suspicion is not a high threshold, and the 'requisite level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence.'" *United States v. Lawes*, 292 F.3d 123, 127 (2d Cir.2002) (quoting *United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir.1995)). Whether a set of facts gives rise to a reasonable suspicion is to be determined by looking at the totality of the circumstances, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002), and the analysis is "exceedingly fact-specific." *United States v. Demoss*, 279 F.3d 632, 636 (8th Cir. 2002).

Neither probable cause nor reasonable suspicion is capable of reduction to a simple or precise formula. "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, nontechnical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, 695, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Here, viewing the evidence in the light most favorable to plaintiff, the non-moving party, I find that defendants are entitled to judgment in their favor. Even assuming that plaintiff's version of the events is the correct one, his detention and arrest were lawful.

It is true that Officer Bernabei's and plaintiff's accounts of the events leading up to plaintiff's arrest differ. According to Officer Bernabei, he witnessed both plaintiff and Ocasio engaging in what appeared to be drug transactions with various other individuals for some twenty minutes before the officers closed in. Plaintiff, on the other hand, claims that he had walked over to Ocasio and had been speaking with him for only a few moments before he was stopped and then arrested by the police.

Certainly if Officer Bernabei's account is credited, there can be little doubt that the police had a valid basis to stop plaintiff, given Bernabei's knowledge that the intersection was a hotbed of drug activity, and Bernabei's observation of plaintiff's and Ocasio's behavior, which indicated that the two of them were working in concert, and which was consistent with that of street drug sellers. Even if plaintiff's story were accepted as true, however, there were enough facts to give rise to a reasonable suspicion that criminal activity was afoot, and that plaintiff was involved.

Assuming that plaintiff is correct in stating that he had walked over to Ocasio after parking his car, and that he and Ocasio then walked together a short distance down the sidewalk before turning around and walking back, the facts that were known to Officer Bernabei still provided a reasonable basis to suspect that plaintiff and Ocasio were involved in a drug deal. Regardless of when plaintiff arrived on the scene, Officer Bernabei's testimony stands unrebutted that he had seen *Ocasio* engaging in a series of suspicious transactions or exchanges for about twenty minutes.

To defeat a well-founded motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, he must come forward with sufficient evidence to support a jury verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 263, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Plaintiff has failed to do so.

I realize that plaintiff himself may have no personal or direct knowledge of Ocasio's actions prior to plaintiff's arrival, but he has presented *no* evidence of *any* kind tending to cast doubt on Officer Bernabei's statements concerning Ocasio. For instance, there is no apparent reason why he could not have deposed Ocasio to testify about the relevant events.[7] Plaintiff could also presumably have obtained testimony from his girlfriend to corroborate plaintiff's story that he had dropped her off at his parents' house just a short time before these events occurred. In view of this complete failure to rebut Officer Bernabei's testimony in this regard, I find that plaintiff has failed to meet his burden of demonstrating that any issue of material fact exists insofar as Bernabei's testimony concerning Ocasio is concerned. *See Hernandez v. City of Rochester*, 212 F.Supp.2d 143, 150 (W.D.N.Y.2002) ("A party opposing summary judgment on grounds that there exist genuine issues of material fact must respond with more than simply a general denial") (citing Fed.R.Civ.P. 56(e)).

■ Assuming the truth of plaintiff's testimony concerning the events leading up to his arrest, then, as well as the unrebutted testimony of Officer Bernabei regarding his observations of Ocasio, the following facts were known to Bernabei at the time when he decided that plaintiff should be intercepted and detained: (1) the location in which these events occurred was known for frequent street-level drug sales; (2) Ocasio was "hanging out," Bernabei Depo. at 40, outside a grocery store at the intersection of Bay and Rohr Streets, at around 9:00 p.m. on the night of February 6, 1999[8]; (3) over a period of about twenty minutes, several persons approached Ocasio and talked with him, whereupon Ocasio and the other person or persons would walk around the corner to a driveway; (4) upon reaching the driveway, Ocasio would leave the other person standing on the sidewalk, while he walked up the driveway, temporarily disappearing from Bernabei's sight; (5) Ocasio would then reappear from the driveway, and appear to engage in some sort of exchange with the other person; (6) once the exchange was completed, Ocasio would once again take up his post outside the grocery store, until the next person came along; (7) based on Officer Bernabei's experience as a police officer, Ocasio's actions were consistent with those of a street-level drug seller; (8) after observing a number of these exchanges, Bernabei saw plaintiff approach Ocasio in a manner similar to

---

7. It appears that Ocasio pleaded guilty to a charge of drug possession arising out of these events, Hernandez Aff. Ex. A, at 2, so there is no reason to believe that he could claim a Fifth Amendment privilege in this regard.

8. According to National Weather Service records, the high and low temperatures in Rochester on that date were 40 and 27 degrees Farenheit. National Weather Service Climate Information for Rochester, available at http://www.erh.noaa.gov/er/buf/climate/rocprecli0299.htm. Officer Bernabei also testified that it was a "cold" night. Bernabei Depo. at 37–38. While I do not mean to suggest that standing outside on a cold night is itself indicative of wrongdoing, this would tend to suggest that Ocasio was not simply standing outside enjoying the weather.

Ocasio's other (apparent) customers; (9) plaintiff and Ocasio began walking toward the spot where prior exchanges had occurred; (10) upon seeing Officers Bernabei and Beaudrault approach in their vehicle, in uniform, plaintiff immediately left Ocasio's side and crossed the street.

■ Upon any reasonable view of those facts, Officer Bernabei could have had a reasonable suspicion, if not probable cause, that plaintiff and Ocasio were at least discussing or negotiating a drug transaction. Although each of those factors, standing alone, is not necessarily suggestive of unlawful behavior, "factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir.1999); *see also id.* at 759 n. 5 ("Our determination of reasonable suspicion is made by looking at all the circumstances together to 'weigh not the individual layers but the "laminated" total'") (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978)).

■ Furthermore, even if all the facts viewed collectively could have been consistent with innocent behavior, that does not mean that no reasonable suspicion existed. An officer's "determination that reasonable suspicion exists ... need not rule out the possibility of innocent conduct." *Arvizu*, 534 U.S. at 277, 122 S.Ct. 744. *See also United States v. Basey*, 816 F.2d 980, 989 (5th Cir.1987) ("The reasonable suspicion standard does not require ... that the circumstances be such that there is no reasonable hypothesis of innocent behavior"). Rather, the officer, based on his experience as well as his common sense, is only required to have " 'a particularized and objective basis' for suspecting the person stopped of criminal activity," *Ornelas*, 517 U.S. at 696, 116 S.Ct. 1657 (quoting *United States v. Cortez*, 449

U.S. 411, 417–418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

Given the highly fact-specific nature of reasonable-suspicion analysis, the precise combination of circumstances will necessarily vary from one case to another. *See Estep v. Dallas County, Texas*, 310 F.3d 353, 366 (5th Cir.2002) ("There is no Supreme Court or Fifth Circuit precedent that is factually on all fours with this case, but we would not expect that because, as the Supreme Court has recognized, the Fourth Amendment inquiry is so fact-specific") (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Nevertheless, several of the factors that were present in the instant case have been recognized as supporting a reasonable suspicion of criminal activity.

For instance, Officer Bernabei was entitled to rely in part on his knowledge that the area around Bay and Rohr Streets was the site of frequent drug sales. *See, e.g., United States v. Gomez*, 633 F.2d 999, 1005 (2d Cir.1980) ("The car was halted in an area of high narcotics activity-a factor appropriate in considering whether an investigatory stop was proper"), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 194 (1981); *United States v. Rickus*, 737 F.2d 360, 365 (3d Cir.1984) ("The reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely").

The apparent exchanges between Ocasio and other persons, the fact that he and plaintiff were walking toward the same area where those exchanges took place, and that plaintiff crossed the street away from Ocasio as soon as he saw the uniformed officers approaching in their car, also pointed toward criminal activity. Similarly, in *United States v. Lender*, 985 F.2d 151 (4th Cir.1993), the arresting officer observed four or five men "huddled on

a corner" late at night in a known drug area. *Id.* at 153. One of the men "had his hand stuck out with his palm up, and the other men were looking down toward his palm." *Id.* When the group of men saw the police officers, they "began to disperse, and the defendant walked away from the officers with his back to them." *Id.* Based on the hour of the day, the group's dispersal upon seeing the officers, the known character of the neighborhood, and the officers' practical experience in recognizing drug transactions, the court upheld the investigatory detention. *Id.* at 154–55. *See also Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion"); *United States v. Cook,* 277 F.3d 82, 86–87 (1st Cir.2002) (*Terry* stop was justified in part by officer's observation of defendant and another man in the midst of what looked to be some sort of exchange at 1:30 a.m. in an area known for narcotics trafficking, and by fact that the men broke off their interaction and separated when they saw the approaching police officers).

As stated, plaintiff contends that he had simply walked over to Ocasio to talk to him about a friend of theirs. He argues that the mere fact that he was walking and talking with Ocasio could not have given rise to a reasonable suspicion that he was engaged in drug activity.

All that amounts, to, however, is an assertion that there was an innocent explanation for plaintiff's behavior. As already pointed out, though, a police officer need not rule out every noninculpatory explanation for a person's actions before forming a reasonable suspicion of criminal activity. Moreover, Officer Bernabei did not decide to stop plaintiff merely because plaintiff happened to be near Ocasio. Even assuming the truth of plaintiff's account of what happened, he was walking and talking with

Ocasio in the same manner as the other individuals whom Bernabei had seen during the preceding twenty minutes, in what reasonably appeared to him to be likely drug deals. That provided a basis at least to detain plaintiff for questioning. *See United States v. McKie,* 951 F.2d 399, 402 (D.C.Cir.1991) ("This is not, however, a 'mere propinquity' case .... McKie was observed walking with and talking to a suspected drug dealer *at the very time and in the very place of the suspected drug dealing* ").

▮ It bears repeating that "the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). As the Supreme Court has observed,

[t]he process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Cortez,* 449 U.S. at 418, 101 S.Ct. 690. Applying that commonsense standard to the facts of this case, I find that Officer Bernabei had a reasonable suspicion that plaintiff was engaged in criminal activity involving illegal drugs, and that he therefore had an adequate basis upon which to detain plaintiff for purposes of further investigation.

▮ I also find that, once Ocasio had spat out the bags containing cocaine, the officers had probable cause to arrest plaintiff. "Reasonable suspicion, a standard

which is less burdensome than the probable cause standard, may later blossom into probable cause if additional facts come to the attention of the detaining officer." *United States v. Tarango–Hinojos,* 791 F.2d 1174, 1175–76 (5th Cir.1986) (citing *United States v. Brignoni–Ponce,* 422 U.S. 873, 881–82, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975)). When the officers saw that Ocasio had been hiding six plastic bags containing what looked like cocaine in his mouth, that amply confirmed their suspicion that Ocasio had been selling drugs, just as Officer Bernabei suspected. At that point, it was reasonable for them to conclude that plaintiff had indeed been with Ocasio for the purpose of using or possessing drugs.

■■■ In that regard, it should be pointed out that plaintiff was not charged with actual possession of drugs, or with any drug trafficking crime, such as conspiracy to possess with intent to distribute. He was charged only with loitering in the first degree, which requires only that the person charged "loiter[ ] or remain[ ] in any place with one or more persons for the purpose of unlawfully using or possessing a controlled substance . . . ." To arrest plaintiff on this charge, then, the officers only needed probable cause to believe that plaintiff had been loitering or remaining in the area near the intersection for the *purpose* of using or possessing drugs, not that he actually had possessed drugs or that he had sold them to others.

■■■ Again, it remained *possible,* even after Ocasio spat out the drugs, that plaintiff's reasons for talking with Ocasio were perfectly innocent. As with reasonable suspicion, however, once there is a reasonable basis for believing that probable cause exists, "[a] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority,* 124 F.3d 123, 128 (2d Cir.1997). *See also United States v. Patrick,* 899 F.2d

169, 174 (2d Cir.1990) ("a probable cause determination does not require proof beyond a reasonable doubt; it is the mere probability of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment").

I recognize that the charges against plaintiff were dismissed, and that one of the bases for the motion to dismiss was that there was no probable cause for plaintiff's arrest. However, the city court judge did not make an express finding to that effect, and I do not believe that she necessarily decided the issue of probable cause by implication.

■■■ "In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered." *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir.1999); *see also* 28 U.S.C. § 1738 (federal courts accord full faith and credit to state judicial determinations). Under New York law, collateral estoppel applies when the issue as to which preclusion is sought is identical with the issue decided in the prior proceeding, the issue was necessarily decided in the prior proceeding, and the party against whom preclusion is presently sought had a full and fair opportunity to litigate the issue in the prior proceeding. *Sullivan v. Gagnier,* 225 F.3d 161, 166 (2d Cir.2000); *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 345, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999).

■■■ Thus, a state court decision will be given preclusive effect even if it does not explicitly address the issue in question "if resolution of the issue was 'by necessary implication . . . contained in that which [was] explicitly decided.'" *Fuchsberg & Fuchsberg v. Galizia,* 300 F.3d 105, 109 (2d Cir.2002) (quoting *BBS Norwalk One, Inc. v. Raccolta, Inc.,* 117 F.3d 674, 677 (2d Cir.1997)). "The 'necessary implication'

requirement must be clearly met for a decision to have collateral estoppel effect on an issue it does not explicitly address." *Id.*

■ Since "[t]he party invoking collateral estoppel 'bears the burden of proving the identity of the issues ...,'" *BBS Norwalk One,* 117 F.3d at 677 (quoting *Khandhar v. Elfenbein,* 943 F.2d 244, 247 (2d Cir.1991)), "the party asserting preclusion 'bears the burden of showing with clarity and certainty what was determined by the prior judgment,' *Clark v. Bear Stearns & Co.,* 966 F.2d 1318, 1321 (9th Cir.1992), so that '[i]ssue preclusion will apply only if it is quite clear' that this requirement has been met." *Id.* (quoting *Colon v. Coughlin,* 58 F.3d 865, 869 (2d Cir.1995) construing New York law).

■ Plaintiff has made no such showing here. As indicated, plaintiff's motion to dismiss the charges focused on the insufficiency of the accusatory instrument. Although lack of probable cause was one component of that alleged insufficiency, counsel also noted the absence of a laboratory report establishing that the substance found on Ocasio was in fact cocaine. Since Judge Johnson did not state the basis for her decision granting the motion to dismiss, it is impossible to know on which of these grounds her decision was based and, therefore, there is no basis to assume that it was based on a lack of probable cause.

Moreover, even if the city court judge implicitly found that the accusatory instrument did not establish probable cause, that would not necessarily mean that the arresting officer lacked probable cause, since not everything known to the officer was set forth in the accusatory instrument. The criminal information/complaint filed against plaintiff merely stated that plaintiff "was with Agustin [sic] Ocasio who was selling cocaine and found in possession of six bags with intent to sell." Plaintiff's Statement of Undisputed Facts, Ex. A. The dismissal of the charges, then, was likely based on the sparse allegations contained in the accusatory instrument, and did not necessarily decide whether Officer Bernabei had probable cause to arrest. Thus, the issue before the city court was also not identical to that presented here.

■ Even if probable cause to arrest were lacking, however, I find that Officer Bernabei is entitled to qualified immunity for his actions. The defense of qualified immunity "shields government actors from liability if they did not violate clearly established law, or if it was objectively reasonable for such actors to believe that their actions did not violate clearly established law." *Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 1486, 155 L.Ed.2d 227 (2003).

■ Because "[q]ualified immunity is more than a simple defense-it is 'an entitlement not to stand trial or face the other burdens of litigation, ... an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial,'" *Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir.2002) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)), the Supreme Court has made clear that "[w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[9]

9. In *Posr v. Court Officer Shield # 207,* 180 F.3d 409 (2d Cir.1999), the Second Circuit held that it was improper for the district court to have concluded, on a motion to *dismiss,* that it was reasonable for the defendant officers to conclude that probable cause to arrest existed. In *Posr,* however, the complaint sim-

■ To establish a qualified immunity defense, then, defendants must show either "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Kent v. Katz,* 312 F.3d 568, 573 (2d Cir.2002) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In a false arrest context, an individual officer is entitled to qualified immunity if: "(1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." *Ricciuti,* 124 F.3d at 128; *accord Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997).

■ The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Kent,* 312 F.3d at 573 (quoting *Malley,* 475 U.S. at 341, 106 S.Ct. 1092). *See also Malley,* 475 U.S. at 344–45, 106 S.Ct. 1092 (officers' actions in arresting plaintiff objectively unreasonable only where they are "so lacking in indicia of probable cause" as to make belief in its existence unreasonable); *Fodelmesi v. Schepperly,* 1992 WL 84469, *3 (S.D.N.Y. Apr. 15, 1992) (even though state court found that officers lacked probable cause to arrest plaintiff, "it may still have been

objectively reasonable for them to believe that they had probable cause to arrest plaintiff") (citing *Malley* ). Thus, a police officer who makes a warrantless arrest is entitled to summary judgment on the ground of qualified immunity only 'if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officers of reasonable competence could disagree on the legality of the defendant's actions.' *Rogers v. City of Amsterdam,* 303 F.3d 155, 158–59 (2d Cir.2002) (quoting *Cerrone v. Brown,* 246 F.3d 194, 202 (2d Cir.2001)).

For the reasons already given, I conclude that at the very least, Officer Bernabei is entitled to qualified immunity from suit on plaintiff's claim for false arrest. While "[t]he right not to be arrested without probable cause is a clearly established right," *Lee v. Sandberg,* 136 F.3d 94, 102 (2d Cir.1997), the Court "must consider whether a reasonable officer could have believed that the specific action taken by [the defendant] was foreclosed by clearly established law," *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002), and "[t]his inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151.

■ The specific facts of this case have been recited above, and I will not repeat them in full here. In short, though, Bernabei's twenty-minute observation of Ocasio and the other persons who came along

ply alleged that the plaintiff had been arrested for disorderly conduct after he said to a police officer, "One day you're gonna get yours." As the Court of Appeals explained, whether it was reasonable for the officers to have construed that statement as "fighting words" sufficient to give rise to probable cause to arrest for disorderly conduct depended on the surrounding factual circumstances, which had not been established at that stage of the litigation. In the case at bar, though, the facts, at least for purposes of defendants' motion, are

not in dispute. The Court accepts the truth of plaintiff's allegation that he had walked over to Ocasio and begun talking to him only moments before they were intercepted by the police, as well as Officer Bernabei's unrebutted testimony concerning his observation of Ocasio. There are, then, no additional facts that need to be developed before the Court can determine, as a matter of law, whether Officer Bernabei could reasonably have concluded that probable cause to arrest existed.

and apparently did business with him gave Officer Bernabei ample reason to infer that Ocasio was selling drugs from his street-corner location. Upon seeing plaintiff approach Ocasio in the same way as several other people had, and upon observing both plaintiff and Ocasio walking and talking together near the same area where the other transactions had taken place, it was logical and reasonable for Bernabei to suspect that plaintiff's purpose was to obtain drugs. When Bernabei saw that Ocasio indeed had several bags of cocaine on his person, it was reasonable for Officer Bernabei to conclude that he had probable cause to arrest plaintiff. Since "it is evident that [Bernabei's] actions were objectively reasonable or, put differently, that 'officers of reasonable competence could disagree on whether the probable cause test was met,'" *Caldarola*, 298 F.3d at 168 (quoting *Wachtler v. County of Herkimer*, 35 F.3d 77, 80 (2d Cir.1994)), I find that "the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest," and hence summary judgment in his favor is appropriate. *Martinez v. Simonetti*, 202 F.3d 625, 635 (2d Cir.2000) (quoting *Ricciuti*, 124 F.3d at 128).

■ I also find that plaintiff's false arrest claim against the City must be dismissed. In order to hold the City liable on this claim, plaintiff must show that his rights were violated pursuant to a municipal custom or policy. *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff, however, has utterly failed to identify any policy or custom of the City underlying the arrest of plaintiff. The mere fact that Officer Bernabei was at the location where plaintiff was arrested in the course of his employment with the City is not enough, since "[t]here is no *respondeat superior* liability in § 1983 cases." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir.1995)

(citing *Monell*, 436 U.S. at 691, 98 S.Ct. 2018); *see also Pembaur v. Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ Nor are the facts that Beaudrault, a police sergeant, was present, or that "[n]o action was ever taken by the City against" Bernabei, Plaintiff's Memorandum of Law at 11, enough to give rise to municipal liability. For one thing, plaintiff has still not identified any particular custom or policy involved here, and there is no evidence in the record that the City had a custom or policy of arresting people without probable cause. Plaintiff has also not presented any evidence at all that Beaudrault is an official "responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483–84, 106 S.Ct. 1292. In short, the evidence here shows at most a "single incident" involving "only actors below the policymaking level, [which] generally will not suffice to raise an inference of the existence of a custom or policy." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993). Plaintiff's false arrest claim against the City must be dismissed for this reason as well.

## II. Malicious Prosecution Claims

■ To state a claim for malicious prosecution, a plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997), *cert. denied*, 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998); *Donovan*, at 249.

■ Defendants are entitled to summary judgment on this claim as well. First, as explained above, plaintiff cannot show

lack of probable cause for commencing the proceeding. There is no indication in the record that any additional evidence came to light between plaintiffs' arrest and the dismissal of the charges against him that would have dissipated probable cause. *See Lowth v. Town of Cheektowaga,* 82 F.3d 563, 571 (2d Cir.1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact").

■■■■ In addition, plaintiff cannot establish the second element: that the criminal proceeding terminated in his favor. "Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused." *Murphy v. Lynn,* 118 F.3d 938, 948 (2d Cir.1997), *cert. denied,* 522 U.S. 1115, 118 S.Ct. 1051, 140 L.Ed.2d 114 (1998). "The answer to whether the termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed 'impl[ies] a lack of reasonable grounds for the prosecution.'" *Id.* (quoting *Loeb v. Teitelbaum,* 77 A.D.2d 92, 101, 432 N.Y.S.2d 487 (2d Dep't 1980), *modified on other grounds,* 80 A.D.2d 838, 439 N.Y.S.2d 300 (2d Dep't 1981)).

"Certain types of dispositions that do not result from adjudication of the merits have generally been held not sufficiently favorable to the accused to be indicative of innocence. *These include ... dismissals pursuant to N.Y.Crim. Pro. L. § 170.30(1)(a) for failure to allege sufficient facts to support the charge.*" *Id.* (citing *MacFawn v. Kresler,* 88 N.Y.2d 859, 860, 644 N.Y.S.2d 486, 666 N.E.2d 1359 (1996)) (emphasis added). That was the precise basis for plaintiff's motion to dismiss the charges against him. *See* Hernandez Aff. Ex. A, at 1.

■■■■ I also see no basis for a finding of actual malice. This element requires a showing that "the defendant ... commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Nardelli v. Stamberg,* 44 N.Y.2d 500, 502–03, 406 N.Y.S.2d 443, 377 N.E.2d 975 (1978) (quoted in *Rounseville v. Zahl,* 13 F.3d 625, 630 (2d Cir.1994)).

■■■■ No such showing has been made here. There is no evidence that Officer Bernabei had any personal animus toward plaintiff, or that he acted with "a reckless or grossly negligent disregard of the plaintiff's rights." *Hernandez v. State,* 228 A.D.2d 902, 904, 644 N.Y.S.2d 380 (3d Dep't 1996); *Boose,* 71 A.D.2d at 70, 421 N.Y.S.2d 740. Nor was probable cause to initiate a proceeding "'so totally lacking' [that] malice [may] reasonably be inferred." *Sulkowska v. City of New York,* 129 F.Supp.2d 274, 295 (S.D.N.Y.2001) (quoting *Martin v. City of Albany,* 42 N.Y.2d 13, 17, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977)). *See Donovan,* at 260 (dismissing malicious prosecution claim based on absence of actual malice).

Finally, as with the false arrest claim, plaintiff has failed even to allege facts tending to indicate that any municipal policy or custom caused the alleged violations of plaintiff's rights. Plaintiff's malicious prosecution claim against the City fails for this reason as well. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. *See also Shattuck v. Town of Stratford,* 233 F.Supp.2d 301, 318 (D.Conn.2002) (dismissing malicious prosecution claim against municipality for failure to allege existence of official policy or custom); *Arum v. Miller,* 193 F.Supp.2d 572, 586 (E.D.N.Y.2002) (same).

## CONCLUSION

Defendants' motion for summary judgment (Docket # 8) is granted, and the complaint is dismissed as to all defendants.

IT IS SO ORDERED.