985 F.2d 151
 UNITED STATES of America, Plaintiff-Appellant,
v.
Calvin Edwin LENDER, Defendant-Appellee.
UNITED STATES of America, Plaintiff-Appellee,
v.
Calvin Edwin LENDER, Defendant-Appellant.
 Nos. 92-5099, 92-5103.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 2, 1992.
Decided Feb. 1, 1993.
 
 John S. Bowler, Office of U.S. Atty., Raleigh, NC, argued (Margaret Person Currin, U.S. Atty., Jane H. Jolly, Asst. U.S. Atty., on brief), for plaintiff-appellant.
 George Alan DuBois, Jr., Asst. Federal Public Defender, Raleigh, NC, argued, for defendant-appellee.
 Before WILKINSON and NIEMEYER, Circuit Judges, and MORGAN, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 WILKINSON, Circuit Judge:
 
 
 1
 We address herein two issues relating to Calvin Edwin Lender's conviction and sentence for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Lender challenges the denial of his motion to suppress the firearm, and the government has appealed the district court's refusal to sentence Lender as an armed career criminal under 18 U.S.C. § 924(e). We uphold the district court's denial of the motion to suppress, because the police officers had a reasonable suspicion to stop Lender after they observed him in what they believed to be a drug transaction. We hold, however, that defendant should have been sentenced as an armed career criminal, even though one of his three predicate convictions was handed down when he was seventeen, because North Carolina tried the defendant as an adult.
 
 I.
 
 2
 At approximately 12:50 a.m. on August 11, 1990, Officer Christopher Hill of the Kinston Police Department and Officer Richard Thornell of the North Carolina Alcohol Law Enforcement Division were patrolling an area in Kinston, North Carolina. The officers knew the area to be one where heavy drug traffic occurred. As they crossed an intersection, the officers observed a group of four or five men, including the defendant, huddled on a corner. The defendant had his hand stuck out with his palm up, and the other men were looking down toward his palm.
 
 
 3
 Suspecting a drug transaction, the officers stopped their car, got out, and approached the men. Although the officers wore plain clothes and drove an unmarked car, they were readily identifiable as police officers because of their firearms and badges worn at belt-level. As the officers approached, the group began to disperse, and the defendant walked away from the officers with his back to them. Officer Hill called out for the defendant to stop, but the defendant refused. As he walked, the defendant turned and told Hill, "You don't want me; you don't want me."
 
 
 4
 While Lender continued to walk away, both officers observed him bring his hands to the front of his waist as though reaching for or fumbling with something in that area. Officer Hill again called for the defendant to stop. At this point, the defendant stopped, and a loaded semi-automatic pistol fell from his waist to the ground. Both Lender and Officer Hill reached for the gun, but Officer Thornell immediately subdued the defendant, preventing him from grabbing the weapon. Officer Hill then placed the defendant under arrest for carrying a concealed weapon. Because Lender had a history of prior felony convictions, he eventually was indicted on one count of possessing a firearm after having been convicted of a crime punishable by a term exceeding one year, a violation of 18 U.S.C. § 922(g)(1).
 
 
 5
 Prior to trial, the defendant moved to suppress the gun on the grounds that it had been discovered only after the officers had unlawfully seized him. Lender argued both that the officers had no reasonable suspicion to justify stopping him, and that he was seized from the moment he came to a stop after Officer Hill's second call for him to do so. The district court denied defendant's motion, finding that although the officers had no reasonable suspicion to stop defendant, he had not been seized at the time the gun fell into plain view.
 
 
 6
 On October 21, 1991, a jury convicted Lender on the sole count of the indictment. Prior to trial, the government had filed notice that it would seek the fifteen-year mandatory minimum sentence provided in the Armed Career Criminal Act (the "Act"), 18 U.S.C. § 924(e)(1). The government maintained that the defendant qualified for the enhancement because he previously had been convicted of three violent felonies as defined by the Act: breaking and entering in 1982, breaking, entering, and larceny in 1985, and common-law robbery in 1988.
 
 
 7
 The district court declined to sentence Lender as an armed career criminal. The court focused upon the defendant's 1982 breaking and entering conviction, handed down when he was seventeen. According to the district court, section 924(e) left it unclear whether convictions of persons meeting the federal definition of juvenile, a "person who has not attained his eighteenth birthday" under 18 U.S.C. § 5031, should be counted as predicate offenses under the Act. Because of this supposed lack of clarity, the district court invoked the rule of lenity, did not count the 1982 conviction as a predicate offense, and did not sentence the defendant to the fifteen-year minimum. Instead the court sentenced him to thirty-three months, at the high end of his Sentencing Guidelines range.
 
 
 8
 The government appealed Lender's sentence; Lender then filed a cross-appeal on the denial of his suppression motion. We will first address the denial of the motion to suppress, and then the sentencing issue.
 
 II.
 
 9
 In appealing the denial of his suppression motion, Lender argues that Officers Hill and Thornell had no reasonable suspicion to stop him early in the morning of August 11. At most, the defendant maintains, the officers saw a man talking with friends on a street corner in a poor section of town, and the man happened to have his hand out. According to the defendant, these facts did not provide a "particularized and objective basis" for suspecting him of criminal conduct, which Officer Hill needed to order him to stop. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981).
 
 
 10
 We disagree. Reasonable suspicion is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street. Here, the officers personally knew that the area they were patrolling had a large amount of drug traffic. While the defendant's mere presence in a high crime area is not by itself enough to raise reasonable suspicion, an area's propensity toward criminal activity is something that an officer may consider. United States v. Moore, 817 F.2d 1105, 1107 (4th Cir.1987); United States v. Constantine, 567 F.2d 266, 267 (4th Cir.1977). The officers also observed the defendant in this known drug area at nearly 1:00 a.m. The lateness of the hour is another fact that may raise the level of suspicion. See United States v. Knox, 950 F.2d 516, 519 (8th Cir.1991).
 
 
 11
 Additionally, the officers observed the defendant engaged in behavior that they suspected to be a drug transaction. In this neighborhood at this late time of night, a group of men was gathered around Lender looking down into his open palm. We cannot say that a reasonable police officer was required to regard such conduct as innocuous. Even though the officers acknowledged that from their passing patrol car they could not see drugs or other contraband in the defendant's hand, the officers were not required in the absence of probable cause simply to "shrug [their] shoulders and allow a crime to occur." Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Because they suspected illegal activity, Officers Hill and Thornell responded precisely as the law provides: they attempted to investigate further. Id. at 145-46, 92 S.Ct. at 1923; Terry v. Ohio, 392 U.S. 1, 22-23, 88 S.Ct. 1868, 1880-81, 20 L.Ed.2d 889 (1968); Moore, 817 F.2d at 1107.
 
 
 12
 The defendant's conduct after the officers left their car but before Officer Hill called "Stop" did nothing to allay the officers' earlier suspicions. When the officers tried to approach Lender, he attempted to evade them by turning his back and walking away. Evasive conduct, although stopping short of headlong flight, may inform an officer's appraisal of a streetcorner encounter. See United States v. Sharpe, 470 U.S. 675, 683 n. 3, 105 S.Ct. 1568, 1573 n. 3, 84 L.Ed.2d 605 (1985); United States v. Espinosa, 827 F.2d 604, 608 (9th Cir.1987). Given the factors present here, we think Officer Hill had reasonable suspicion to stop the defendant.
 
 
 13
 Further, we agree with the district court that the defendant had not been seized when the firearm on his person fell into plain view. Officer Hill's show of authority in calling for the defendant to stop is not a seizure when the defendant does not yield to that authority. California v. Hodari D., --- U.S. ----, ----, 111 S.Ct. 1547, 1550, 113 L.Ed.2d 690 (1991). Lender argues, however, that he submitted to Officer Hill's second order to stop by coming to a complete halt, and that the gun fell to the ground only after he stopped. Therefore, according to the defendant, the gun fell into plain view after he had been seized.
 
 
 14
 We do not believe, however, that Lender's momentary halt on the sidewalk with his back to the officers constituted a yielding to their authority. Between Officer Hill's first and second commands for the defendant to stop, both officers heard the defendant say, "You don't want me; you don't want me." They also observed him fumbling with his hands in the area of his waist as if reaching for or adjusting a weapon. Defendant asks us to characterize as capitulation conduct that is fully consistent with preparation to whirl and shoot the officers.
 
 
 15
 The defendant's actions after he dropped the pistol indicate further that he had not yielded. Lender had stopped for at most an instant when the gun fell. Instead of stopping and standing still, the defendant quickly moved to pick up the weapon. Under the circumstances it cannot be said that the defendant had yielded, and therefore been seized, before the gun fell into the plain view of the officers.
 
 
 16
 In sum, the officer's command to stop was a lawful one under Terry v. Ohio. The defendant's refusal to submit to a show of authority also supported admission of the firearm into evidence under California v. Hodari D.
 
 III.
 
 17
 We must next ask whether the district court erred in not sentencing the defendant under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). Section 924(e)(1) provides that any "person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony ... shall be ... imprisoned not less than fifteen years." The defendant maintains that he does not have three previous convictions for violent felonies because his 1982 conviction for breaking and entering was a juvenile offense for the purposes of section 924(e).
 
 
 18
 The defendant's argument is three-fold. First, the defendant points to the definition of "violent felony" as:
 
 
 19
 (B) ... any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
 
 
 20
 ....
 
 
 21
 (ii) is burglary, ... or otherwise involves conduct that presents a serious potential risk of physical injury to another....
 
 
 22
 18 U.S.C. § 924(e)(2)(B)(ii). Second, the defendant argues that what is an "act of juvenile delinquency" must be determined in accordance with the definition of "juvenile" given in the Federal Juvenile Delinquency Act--a person who has not turned eighteen. See 18 U.S.C. § 5031. Because he was seventeen when convicted in 1982, and because, according to the defendant, that offense did not involve the use of a firearm, knife, or destructive device, the defendant maintains that the 1982 conviction cannot count as a predicate offense for determining armed career criminal status.
 
 
 23
 We disagree both with this reading of the statute and the conclusion that the 1982 conviction cannot count as a predicate offense. Our disagreement hinges on the appropriate reading of section 924(e)(2)(B) and how its terms are defined under the Act.
 
 
 24
 The definition of "violent felony" is written in the disjunctive. A "violent felony" is either (1) a "crime punishable by imprisonment for a term exceeding one year," or (2) an "act of juvenile delinquency" that involves certain characteristics, provided that the crime or juvenile act meets other criteria not at issue here. See 18 U.S.C. § 924(e)(2)(B). Contrary to defendant's argument, we need not consider whether his 1982 conviction meets the second part of this definition by being an act of juvenile delinquency with certain characteristics. His 1982 breaking and entering conviction meets the first part of the "violent felony" definition by being a crime punishable by imprisonment for a term exceeding one year.
 
 
 25
 The statutory definition of the term "crime punishable by imprisonment for a term exceeding one year" tells us we need not consider the defendant's 1982 conviction as a juvenile offense. The relevant definitions section of the chapter could not be more clear: "[w]hat constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." 18 U.S.C. § 921(a)(20); see also H.R.Rep. No. 495, 99th Cong., 2d Sess. 20 (1986), reprinted in 1986 U.S.C.C.A.N. 1327, 1346 (noting that "the peculiar laws of each State" determine whether a conviction counts for federal purposes). Thus, if the state prosecutes an individual as an adult, as it did here, the first part of the "violent felony" definition applies; if the state prosecutes as a juvenile, then the second part applies. In 1982, North Carolina tried, convicted, and sentenced the seventeen-year-old defendant as an adult because the delinquent juvenile age in North Carolina is sixteen. N.C.Gen.Stat. § 7A-517(12). Because North Carolina law has been incorporated on this point, the defendant's 1982 conviction was not for a juvenile offense, but for an adult crime punishable by imprisonment for a term exceeding one year--a violent felony as defined by the first part of section 924(e)(2)(B).
 
 
 26
 Given the language of the statute, we find unpersuasive the defendant's argument that an "act of juvenile delinquency" must be defined uniformly throughout the country.* Had Congress wanted to set a uniform age in the Act, it easily could have done so. Indeed, Congress had at its disposal the definition of juvenile found in the Federal Juvenile Delinquency Act, but that definition by its terms applies only to its own chapter, see 18 U.S.C. § 5031, and not to the statutes at issue here. See United States v. Clark, 956 F.2d 1176, 1177 (D.C.Cir.1992) (finding the federal definition of juvenile "irrelevant" when a federal sentencing statute specified that state law classifications controlled what was a "felony").
 
 
 27
 This situation differs from that in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in which the Supreme Court established a generic definition for "burglary" under 18 U.S.C. § 924(e). See also United States v. Wilson, 951 F.2d 586 (4th Cir.1991). The Court in Taylor found no clear indication that Congress did not want to use a uniform definition of the term. 495 U.S. at 591, 110 S.Ct. at 2154. Here, by contrast, Congress indicated that it meant to incorporate state law. By explicitly stating that what constitutes conviction of a "crime punishable by imprisonment for a term exceeding one year" is to be determined by the law of the prosecuting jurisdiction, Congress has eschewed a uniform definition in favor of letting states decide at what point adult treatment for a particular offense is indicated. See 18 U.S.C. § 921(a)(20); see also United States v. McBryde, 938 F.2d 533 (4th Cir.1991) (holding that § 921(a)(20) allows states to decide when felons can legally possess firearms); United States v. Essick, 935 F.2d 28 (4th Cir.1991) (same).
 
 
 28
 States differ in their assessments of when crimes should be treated as having been committed by juveniles or adults. States generally make the distinction based on the perpetrator's age, with the distinction being made anywhere from age sixteen to age nineteen. Samuel M. Davis, Rights of Juveniles § 2.1 (2d ed. 1980 & Supp.1990). Decisions are made, however, to try some persons of juvenile age as adults, and persons of adult age as juveniles, in specified situations. Id. at §§ 2.8-2.10. These situations range from mandatory adult trials when juveniles are charged with certain offenses, see Ind.Code § 31-6-2-1.1(d) (1992) (requiring adult trials for murder, kidnapping, rape, and aggravated robbery), to the exercise of guided discretion by a prosecutor. See Wyo.Stat. §§ 14-6-203(c)-(f), 14-6-237(b) (1986) (granting discretion for a prosecutor to try seventeen- to nineteen-year-olds as either adults or juveniles). Whether the states themselves adopt an approach to juvenile delinquency that emphasizes categorical age limits or that places greater discretion over the kind of prosecution in the hands of state authorities is not material. The point is simply that Congress has expressed its intention here to follow the state's decision.
 
 
 29
 We acknowledge that a preference exists for determining the meaning of federal criminal legislation without reliance on diverse state laws. The cases make clear that in the absence of a specific indication to incorporate the differing rules of the states, federal criminal sanctions should be applied with uniform standards and definitions. See Taylor, 495 U.S. at 591, 110 S.Ct. at 2154; Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 119-20, 103 S.Ct. 986, 995-96, 74 L.Ed.2d 845 (1983); United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957). The ultimate choice, however, of whether to enact a uniform or an incorporative approach remains one for Congress. In this case, Congress has chosen the latter approach, and section 924(e)(1) is clear that the prosecuting jurisdiction's determination of whether an individual is prosecuted as a juvenile or an adult must be respected by later sentencing courts. The district court should have considered the defendant's 1982 conviction and three year sentence as an adult conviction for a violent felony. Because the defendant violated section 922(g) and had three previous convictions for violent felonies, he should have received the enhanced sentence provided in the Act for being an armed career criminal.
 
 IV.
 
 30
 For the above reasons, we affirm the district court's denial of defendant's motion to suppress, but we vacate the sentence imposed by the district court and remand the case with instructions that defendant be sentenced as an armed career criminal.
 
 
 31
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 We find equally unpersuasive the defendant's argument that the incorporation of state definitions into the federal statute violates the Equal Protection Clause by conditioning sentence enhancement on the "arbitrary criteria" of where certain predicate offenses were committed. Congress is not constitutionally prohibited from leaving some aspects of federal statutes to the judgment of individual states. See Robertson v. Wegmann, 436 U.S. 584, 593-94 n. 11, 98 S.Ct. 1991, 1997 n. 11, 56 L.Ed.2d 554 (1978) ("statutory reliance on state law obviously means that there will not be nationwide uniformity on these issues"). It is not irrational for Congress to defer to state law with regard to the characteristics of a prior offense, and doing so is no more intentionally arbitrary than our system of federalism itself. Additionally, defendant cannot claim that the use of his 1982 conviction to enhance his sentence is somehow unfair, when he has been on notice since that time that he had an adult conviction on his record for breaking and entering