**UNITED STATES of America, Plaintiff,**

v.

**Anthony Jerome VASS, Defendant.**

**Crim. No. 92–193–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 24, 1993.

**21**

Kevin M. Comstock, Asst. U.S. Atty., Norfolk, VA, for U.S.

Eric Turner, William P. Robinson, Robinson, Zaleski, Woolard & Lindsey, Norfolk, VA, for Anthony Vass.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Anthony Jerome Vass has moved to suppress a .38 caliber handgun recovered by Portsmouth City police during an encounter with Vass on June 18, 1992 and statements Vass made to police several months later regarding that incident. An evidentiary hearing was held on February 19, 1993. For the reasons set forth below, the motion is denied.

### STATEMENT OF FACTS

On June 18, 1992, Sergeant Gerald Boone, a member of the Police Department for the City of Portsmouth for 27 years, was riding in a community patrol vehicle with two civilians near the Lincoln Park area of Portsmouth. According to the undisputed testimony of Officer Boone, at approximately 1:00 a.m., Boone heard several gunshots fired in rapid succession coming from the direction of Lincoln Park several blocks away. As the patrol continued, Boone saw a man fifteen to twenty seconds later, subsequently identified as Vass, running fast from the direction the shots were fired. As the patrol car circled the block, Boone again saw Vass emerging from between two houses in a well-lit section of the street.

Upon seeing Vass the second time, Boone, who was dressed in civilian clothes, got out of the patrol car, identified himself as a police officer and, with his gun drawn, ordered Vass to stop. In response, Vass halted momentarily, faced Boone, lifted up his sweatshirt, withdrew a .38 caliber handgun, dropped the weapon on the ground, and ran. Boone again ordered Vass to stop, and, when Vass complied, Boone placed him under arrest. In November 1992, while Vass was in custody on a separate weapons charge, Vass, having been properly warned of his rights, voluntarily made incriminating statements about the June 18 incident.

In a superseding indictment returned in December 1992, Vass was charged with two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Vass thereafter filed a motion to suppress "testimony or tangible items" seized in violation of the Fourth Amendment. At the suppression hearing, defense counsel clarified that Vass challenged only the June 18 seizure of the .38 caliber handgun and the November 1992 statements made by Vass concerning that incident.

### DISCUSSION

The sole basis advanced for the Fourth Amendment challenge is Vass' contention that the June 18 encounter with Officer Boone amounted to an impermissible investigative stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) because Boone allegedly did not have reasonable suspicion to stop Vass. According to Vass, it was physically impossible for him to have covered several blocks in the fifteen to twenty second interval from the time Boone heard shots until he first spotted Vass. Under these circumstances, Vass contends no reasonable officer could have formed a reasonable suspicion that Vass had been involved in the shooting. As a result, Vass argues, both the weapon he dropped on June 18 and the statements he made about that incident in November are fruit of the poisoned tree.

The government counters that under the principles set forth in *California v. Hodari D.*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), Vass abandoned the

weapon on June 18 before he was seized. As a result, the government argues that the court need not determine whether an objective level of suspicion justified stopping Vass. Alternatively, the government contends that if the court concludes that Vass had been seized before he abandoned the weapon, there existed reasonable suspicion to justify stopping Vass.

The principal issue presented by this suppression motion is therefore whether Vass had been seized within the meaning of the Fourth Amendment before he abandoned his gun by throwing it on the ground. If he was not seized, the gun was lawfully recovered by the police. *See Hodari D.,* —— U.S. at ——, 111 S.Ct. at 1549. If Vass was seized, the court must then determine whether there existed reasonable suspicion to justify the *Terry*-type seizure. *See, e.g., United States v. Porter,* 738 F.2d 622, 625 (4th Cir.) (*Terry* stop is a limited seizure within meaning of Fourth Amendment that must be justified by reasonable suspicion), *cert. denied,* 469 U.S. 983, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984).

[2] Whether an encounter between the police and a citizen amounts to seizure under the Fourth Amendment turns on whether "in view of all of the circumstances surrounding the [encounter], a reasonable person would have believed that he [or she] was not free to leave." *Michigan v. Chesternut,* 486 U.S. 567, 573, 108 S.Ct. 1975, 1979, 100 L.Ed.2d 565 (1988) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.)); *see also Florida v. Bostick,* —— U.S. ——, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991); *United States v. Wilson,* 953 F.2d 116, 121–22 (4th Cir.1991). The test is an objective one. *See, e.g., Wilson,* 953 F.2d at 121. As the Supreme Court of the United States pointed out in *Hodari D.,* however, that a reasonable person would not have felt "free to leave" by a police show of authority "states a *necessary,* but not a *sufficient* condition for seizure." —— U.S. at ——, 111 S.Ct. at 1551. Rather, for a seizure to have occurred, the citizen must also have submitted in fact to the assertion of authority. *See, e.g., Hodari D.,* —— U.S. at ——, 111 S.Ct. at

1551–52; *United States v. Lender,* 985 F.2d 151, 154 (4th Cir.1993); *Wilson,* 953 F.2d at 122.

The United States Court of Appeals for the Fourth Circuit recently applied these principles to analogous circumstances in *United States v. Lender.* In that case, officers on patrol in the early morning hours observed a group of individuals whom the officers suspected of engaging in a drug transaction. When the plain clothes officers got out of their patrol car, approached the men, and identified themselves as police officers, the group began to disperse. Lender walked away from the officers with his back to them and refused to comply with one officer's command to stop. Instead, Lender turned and told the officer "you don't want me." As Lender continued to walk away, the officer observed him reaching for something in the waist area of his clothing. The officer again ordered Lender to stop. At that point, Lender stopped and a loaded handgun fell to the ground. Lender was thereafter arrested. *Lender,* 985 F.2d at 153.

In concluding that Lender had not actually submitted to authority before the gun dropped and had not therefore been seized under the principles of *Hodari D.,* the Court of Appeals observed:

> We do not believe, however, that Lender's momentary halt on the sidewalk with his back to the officers constituted yielding to their authority ... Defendant asks us to characterize as capitulation conduct that is fully consistent with preparation to whirl and shoot the officers.

> The defendant's actions after he dropped the pistol indicate further that he had not yielded. Lender had stopped for at most an instant when the gun fell. Instead of stopping and standing still, the defendant quickly moved to pick up the weapon. Under these circumstances, it cannot be said that the defendant had yielded, and therefore had been seized, before the gun fell into the plain view of the officers.

*Id.* at 154–55.

Upon the principles announced in *Lender* and based on the facts of this case, the court concludes that Vass had not submitted to

authority, and therefore was not seized for Fourth Amendment purposes when he dropped his weapon to the ground. At most, Vass stopped only momentarily to remove his weapon from his waist area. As in *Lender*, Vass' conduct was just as consistent with an intention to draw on the officer as to capitulate. That Vass stopped momentarily and faced Officer Boone while Lender stopped momentarily with his back to the officers is not of constitutional significance.

Furthermore, as in *Lender*, Vass' subsequent conduct belies any assertion that he submitted to authority. Immediately after discarding his weapon, Vass again began to flee. Only after Officer Boone again ordered Vass to stop did Vass submit and was arrested. Clearly, Vass refused to submit to Officer Boone's initial show of authority.

For the same reasons, the voluntary statement concerning the weapon which Vass made in November 1992 is not the fruit of an improper search or seizure. Hence the motion to suppress that statement also is denied.

Because the court concludes that no seizure occurred, it need not determine whether reasonable suspicion existed under the facts presented to have justified an investigative stop of Vass.

The Clerk is directed to send a copy of this Memorandum and Order to all counsel of record.

It is so Ordered.