**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————

**No. 06-4200**

————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RANDELL TOBIAS GRADY,

Defendant - Appellant.

————————

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, District Judge. (1:05-cr-00247-WLO-1)

————————

Submitted: January 8, 2007        Decided: January 23, 2007

————————

Before TRAXLER and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

————————

Affirmed by unpublished per curiam opinion.

————————

Louis C. Allen, III, Federal Public Defender, Gregory Davis, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Kearns Davis, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following the district court's denial of his motion to suppress, Randell Tobias Grady (Grady) conditionally pled guilty to one count of possession with intent to distribute cocaine base (crack) and one count of possession with intent to distribute cocaine. Grady received concurrent sentences of 120 months' imprisonment. We affirm.

On December 16, 2004, Larry Hubbard (Officer Hubbard), an officer with the City of Concord, North Carolina Police Department, was working secondary employment at the Carolina Mall in Concord. In the weeks prior to that day, there had been reports of vehicles being stolen in the mall parking lot, and Officer Hubbard was providing parking lot security. During his patrol, he received information that a mall patron had seen an individual reach through a partially-opened window of a van parked in the parking lot, open the van door, enter the van, and drive away.

Suspecting that the van might just have been stolen, Officer Hubbard identified the van as it left the parking lot and followed it. Officer Hubbard saw that the driver, Grady, was not wearing a seat belt. Officer Hubbard signaled for the van to pull over, and Grady moved the van to the left side of the road and stopped. Officer Hubbard reported by radio to a dispatcher that he had stopped a possible stolen vehicle, and he requested registration information based on the van's license plate number.

Officer Hubbard walked to the driver's side window and asked Grady for his license and registration. Officer Hubbard then asked Grady to step out of the van. During the ensuing patdown search, Officer Hubbard felt a large, hard object inside Grady's jacket. Upon removing it, Officer Hubbard determined that it was a large roll of cash. The volume and denominations of the bills led Officer Hubbard to suspect drug activity. Officer Hubbard asked Grady to sit in a patrol car belonging to another officer who had recently arrived.

While Grady was in the patrol car, Officer Hubbard made several radio and telephone calls. One of those was a call to Officer Anthony Atwell (Officer Atwell), requesting that Officer Atwell bring his narcotic detection dog to Officer Hubbard's location. Through the remaining calls, Officer Hubbard learned that Grady was involved in drug activity. Officer Todd McGee informed him that Grady was an active drug dealer. Officer Javonne Clark stated that Grady was a prominent drug dealer. Detective DeGrace (Detective DeGrace) told Officer Hubbard that Grady was the subject of an ongoing drug investigation. In fact, Detective DeGrace knew that, approximately forty-five minutes before the traffic stop, a confidential informant had arranged to purchase cocaine from Grady.

Approximately fifteen minutes after initiating the stop, Officer Hubbard received a response from the dispatcher that

confirmed that Grady was the owner of the van. Officer Hubbard then moved Grady to a different patrol car, where he began to issue a citation for failure to wear a seat belt. Before Officer Hubbard finished issuing the citation, Officer Atwell arrived and had his narcotic detection dog scan the exterior of Grady's van. The scan resulted in the dog alerting to the odor of narcotics. The period of time from the initial traffic stop to the alert by the dog was approximately thirty to thirty-five minutes.

After the narcotic detection dog alerted, the officers present entered the van and searched it. Inside the van, the officers recovered a black fanny pack containing cocaine and crack, and Grady was subsequently arrested.

On July 25, 2005, Grady was charged with several drug offenses arising from his alleged participation in a drug conspiracy and from the December 16, 2004 stop of his van. After the district court denied his motion to suppress, Grady conditionally pled guilty to two counts related to the December 16, 2004 stop, that is, one count of possession with intent to distribute crack and one count of possession with intent to distribute cocaine.[1] On February 3, 2006, Grady was sentenced to 120 months' imprisonment on both counts, to be served concurrently. Grady filed a timely notice of appeal.

---

[1]In his plea agreement, Grady reserved the right to appeal the district court's denial of his motion to suppress.

Grady first contends that the district court erred when it denied his motion to suppress. In pressing this argument, Grady concedes that Officer Hubbard was justified in stopping his van for the seatbelt violation and to conduct a brief investigation to ascertain whether the van was stolen. Grady also does not challenge the patdown search following the stop. According to Grady, the length of the stop was improper because the stop should have concluded before the arrival of the narcotic detection dog. Grady's position is premised on the propositions that, by the time the narcotic detection dog arrived, Officer Hubbard had: (1) verified that Grady owned the van; and (2) had sufficient time to issue a citation for the seatbelt violation.

The <u>Terry</u>[2] reasonable suspicion standard requires an officer to have a reasonable suspicion that criminal activity is afoot before he may conduct a brief investigatory stop of a person, 392 U.S. at 30, or continue to seize a person following the conclusion of the purposes of a valid stop, <u>see, e.g.</u>, <u>United States v. Rusher</u>, 966 F.2d 868, 876-77 (4th Cir. 1992) (holding that, during a routine traffic stop, the officer may request a driver's license and vehicle registration, run a computer check, and issue a citation, but that "[a]ny further detention for questioning is beyond the scope of the <u>Terry</u> stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime"). The

---

[2]<u>Terry v. Ohio</u>, 392 U.S. 1 (1968).

standard "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). However, the Terry reasonable suspicion standard does require "a minimal level of objective justification" for the police action. Id. "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." Id. at 123-24 (citation and internal quotation marks omitted). We have said that the Terry reasonable suspicion standard is "a commonsensical proposition" and that "[c]ourts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993).

The reasonable suspicion determination does not depend upon any one factor, but on the totality of the circumstances. United States v. Sokolow, 490 U.S. 1 (1989). In assessing whether reasonable suspicion is present, we review the district court's findings of historical fact for clear error and the determination of reasonable suspicion de novo. Ornelas v. United States, 517 U.S. 690, 699 (1996).

We need not decide whether the seatbelt citation should have been issued prior to the time the narcotic detection dog alerted on the van because Officer Hubbard had reasonable suspicion that Grady

was involved in drug activity, thus justifying the detention of Grady for the short period of time necessary to allow for the scan.

The large amount of cash found on Grady clearly suggested that Grady was involved in drug activity. See United States v. Thomas, 913 F.2d 1111, 1115 (4th Cir. 1990) (noting that carrying large amounts of cash can help to establish the link to drug activity). Moreover, the officers knew that within an hour before the stop a confidential informant had arranged to purchase cocaine from Grady. These facts unquestionably justified the continued detention of Grady for the short period of time necessary to allow for the scan. Accordingly, the district court did not err when it denied Grady's motion to suppress.

Grady also contends that he qualified for a sentence below the mandatory minimum and that the district court erred by not giving him the benefit of the safety valve provisions in 18 U.S.C. § 3553(f) and United States Sentencing Guidelines Manual (USSG) § 5C1.2.

A defendant who meets all five criteria set out in USSG § 5C1.2 (incorporating §§ 3553(f)(1)-(5)) is eligible for a sentence below the mandatory minimum. One of the factors requires that a defendant must truthfully disclose to the government all information and evidence he has concerning the offense of conviction and all relevant conduct. USSG § 5C1.2(5). In support of his claim, Grady states that he cooperated with the government.

However, the record reflects that Grady was less than forthcoming concerning his drug activities.  Accordingly, we cannot take issue with the district court's conclusion that Grady was ineligible for application of the safety valve provision of USSG § 5C1.2.

Grady also contends that a sentence below the mandatory minimum was required under United States v. Booker, 543 U.S. 220 (2005).  However, "Booker did nothing to alter the rule that judges cannot depart below a statutorily provided minimum sentence. . . . [A] district court has no discretion to impose a sentence outside of the statutory range established by Congress for the offense of conviction."  United States v. Robinson, 404 F.3d 850, 862 (4th Cir.), cert. denied, 126 S. Ct. 288 (2005).

For the reasons stated herein, the judgment of the district court is affirmed.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED