**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-5183

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARCUS BOOKER COLLINS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Rebecca Beach Smith, District Judge. (2:06-cr-00060-RBS)

Submitted: August 20, 2007          Decided: September 4, 2007

Before WILKINSON, NIEMEYER, and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

J. Brian Donnelly, PRICE, PERKINS, LARKIN & DONNELLY, Virginia Beach, Virginia, for Appellant. Chuck Rosenberg, United States Attorney, James Ashford Metcalfe, Assistant United States Attorney, Edward K. Nickel, Third Year Law Student, Norfolk, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On October 19, 2005, Norfolk police received a citizen's complaint that drug dealers were working "an open air market" starting at 8:00 p.m. every night in front of a restaurant in a shopping center at 1010 Park Avenue. This area was known to officers as a high crime area with ongoing drug dealing. The complaint was assigned to Officer McCarraher two days later.

On November 3, 2005, at 7:00 p.m., Officer McCarraher and Officer Batteen drove by the Park Avenue Shopping Center to substantiate the citizen's complaint. The officers saw at least ten people and possibly as many as thirty loitering in front of the shopping center. Based on their experience, the officers believed the activity observed was consistent with drug sales. McCarraher and Batteen then left the area to gather additional officers.

An hour later, Officers McCarraher, Batteen Karpovich, Balmaceda, Coleman, and Nichols returned to the shopping center. Each officer was in plain clothes but the all had badges displayed. Karpovich, McCarraher, Batteen, and Balcameda parked in the lot of a retirement home adjacent to the breezeway of the shopping center. Karpovich and Balcameda proceeded up the right side of the breezeway while McCarraher and Batteen proceeded up the left. Balcameda yelled "Norfolk Police" as they approached the area where people were loitering, and the crowd began to disperse.

- 2 -

Batteen continued down the left side of the breezeway toward two people leaning against the wall. As Batteen came within five feet of the two people, he identified himself as a police officer. One of the two individuals, Marcus Collins, turned toward Batteen and then "bladed" his body away from Batteen and reached toward his waistband. By turning away, Collins made himself a smaller target and prevented Batteen from seeing what he was doing with his right hand, which was by his waistband.

As soon as Collins turned away, Batteen grabbed his left arm and shirt and demanded Collins show his other hand. Collins refused Batteen's several requests to remove his other hand but stated that he had identification. McCarraher then attempted to grab Collins' other hand, but Collins struck him in the chest and all three men fell to the ground. The officers eventually secured both of Collins' hands and lifted him from the ground.

Once Collins was off the ground, the officers observed a gun on the ground directly underneath the area where Collins' waistband would have been. The gun was loaded with at least six rounds. Officers then searched Collins and recovered two bags of crack cocaine, two bags of heroin, and $750. Officers also recovered an identification card in Collins' right interior jacket pocket, not in his waistband. During the ride to the police station, Collins spontaneously admitted "the officer thought I was

trying to grab my gun, but I was trying to tell the officer I was only trying to get my ID."

Collins was ultimately charged in a four count indictment with: (1) possession with intent to distribute five or more grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1),(b)(1)(B)(iii) (2000); (2) possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(C); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000); and (4) carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (West 2000 & Supp. 2007). Collins filed a motion to suppress, which was denied.

At his trial, Collins elected to testify. During direct examination, Collins confirmed evidence offered in the Government's case in chief that he had at least four prior felony convictions and that he had been incarcerated for a total of fifteen years, beginning when he was a juvenile. Collins also testified that a day or two before his arrest, he had secured a $15,000 loan from the Navy Federal Credit Union, allegedly for the purchase of a Chevy Tahoe. In response to Collins' testimony about the loan, the district court questioned Collins extensively about the facts surrounding the loan.

After answering the court's questions regarding the loan, Collins testified that he worked at a clothing store in the

shopping center, that he had stepped outside to smoke a cigarette, and while outside he began speaking to another man. At this point, the court again broke in and questioned Collins about the person's identity.

As Collins continued his testimony, he denied being in possession of drugs or a gun. At that point, the court again interrupted and asked Collins several questions. Specifically, the Court asked Collins "so you are saying that just all of a sudden almost $3,000 in drugs appeared?"

On cross-examination, the court continued to question Collins regarding the $15,000 loan. Collins admitted that he never purchased the truck and that the majority of the money went to two individuals, Dajuan Glover and Sherley White. Collins also continued to dispute the officers' testimony. At one point, Collins stated "I'm under the same oath, the same as the officers." The court immediately responded by asking Collins how many times he had been convicted of a felony. Defense Counsel objected to the court's question after Collins answered.

At the conclusion of Collins' testimony, the court recessed for the day. When the court next convened, the court repeated its preliminary instruction to the jurors that they were not to draw any inferences from its questioning of any witness, including the Defendant. Following the court's instruction, the

defense rested.   The Government then called four witnesses in rebuttal, to which the defense objected.

At the conclusion of the evidence, the jury returned a guilty verdict on each count.  Collins was sentenced to 420 months' imprisonment on Count One, 360 months' concurrent on Count Two, 120 months' concurrent on Count Three, and 60 months' consecutive on Count Four.  Collins timely noted an appeal.  On appeal, Collins alleges that the district court erred in denying his suppression motion, in interrogating him during his trial, and in admitting the Government's rebuttal evidence.  We affirm.

## I. The district court properly denied Collins' suppression motion.

The Supreme Court has held that, consistent with the Fourth Amendment, police officers may conduct brief investigatory stops of individuals where officers have reasonable suspicion that criminal activity may be afoot.  Terry v. Ohio, 392 U.S. 1 (1968); See Illinois v. Wardlow, 528 U.S. 119, 123 (2000).  In assessing whether officers had a reasonable suspicion of criminal activity, this court must consider the totality of the circumstances surrounding the seizure.  United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir. 1997) (quoting United States v. Sokolow, 490 U.S. 1 (1989) (internal quotations omitted)).  "Reasonable suspicion is a commonsensical proposition.  Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the streets."  United States v. Lender, 985 F.2d

151, 154 (4th Cir. 1993). Reasonable articulable suspicion may be established by a series of acts, each of them perhaps innocent when viewed separately, but when viewed in the aggregate by a trained police officer warrant further investigation. Sokolow, 490 U.S. at 9-10 (quoting Terry, 392 U.S. at 22).

Here, the officers had reasonable suspicion of criminal activity at the point they seized Collins. Two weeks prior to Collins' arrest, police received an anonymous tip that an open air drug market was being conducted at the Park Avenue Shopping Center. Of the six officers who investigated the complaint on November 3, 2005, at least two of them had made prior narcotics arrests there, and it was well known to police that this was a high crime area. On November 3, 2005, Officers McCarraher and Batteen independently verified the complaint by driving past the shopping center and observing activity that, in their experience, was consistent with narcotics trafficking.

As Officer Batteen approached Collins and identified himself as a Norfolk police officer, Collins became nervous, turned away from Batteen, and reached toward his waistband. As Collins' "bladed" away from Batteen he presented a smaller target and moved in a manner similar to a trained officer reaching for a weapon. At that point, based on Collins' motion, the verified anonymous tip, and the officer's knowledge that this was a high drug and crime area, Batteen had reasonable articulable suspicion to seize Collins

and stop him from reaching for his waistband.  Accordingly, the district court did not err in denying Collins' motion to suppress.

## II. The district court's questioning of Collins did not constitute an abuse of discretion.

A trial court is specifically authorized by the Federal Rules of Evidence to "interrogate witnesses, whether called by itself or by a party."  Fed. R. Evid. 614(b).  On appeal, this court will afford a measure of deference to the decision by a district court to exercise its authority under Rule 614(a) to question a witness.  United States v. Smith, 452 F.3d 323, 333 (4th Cir. 2006).  The discretion enjoyed by district courts to interject with questions is not limitless and is reviewed for an abuse of discretion.  Whether the court so abused its discretion during its interrogation of a defendant so as to deprive that defendant of a fair trial, as opposed to a perfect trial, is determined by looking not at the complained of questions in isolation, but at the record as a whole for indicators of "bias that might indicate a belief on the judge's part that the" defendant was guilty.  United States v. Parodi, 703 F.2d 768, 775-76 (4th Cir. 1983).

At the outset, it should be noted that much of the court's interrogation of Collins went to clarifying rambling, incoherent testimony that bordered on the unusual.  Smith, 452 F.3d at 333.  Moreover, as the record shows, Collins was nervous during his two and a half hour long testimony and often gave lengthy, rambling, non-responsive answers.  With respect to Collins' loan,

the record reveals, at most, an effort by the court to clarify a point that even Collins recognized as implausible. Smith, 452 F.3d 333.

Similarly, with respect to Collins' testimony regarding the man he spoke with in front of the store just prior to his arrest, and his testimony about whether he saw the officers approach, Collins gave either inconsistent or rambling answers to counsel's questions. The record does not support any inference other than that the court interrogated Collins on these points to clarify his testimony.

Collins also points to other questions and comments by the district court that he argues were "evidence of partiality or bias that might indicate a belief" by the district court that he was lying. Parodi, 703 F.2d at 776. Although these questions cited by Collins might "suggest the advisability of greater restraint" by the district court, in light of the record as a whole, Collins was not denied a fair trial, as opposed to a perfect trial. Smith, 452 F.3d at 333; Parodi, 703 F.2d at 777.

**III. The district court did not abuse its discretion in admitting rebuttal evidence regarding Collins' loan.**

Collins' final alleged error on appeal is that the district court erred in admitting rebuttal evidence regarding his $15,000 loan. Collins claims that he did not put on any evidence with respect to the loan. According to Collins, the Government and district court expressed their opinion during his testimony that he

was lying about the loan and the reason why he was found in possession of $750. However, after learning that Collins was telling the truth about receiving the loan, the Government called a loan officer from the Navy Federal Credit Union and DEA Agent Pompa to testify in rebuttal.

Rebuttal evidence is evidence that explains, repels, counteracts, or disproves facts given in evidence by the opposing party. United States v. Stitt, 250 F.3d 878, 897 (4th Cir. 2001). "Any fact tended to be proved by the original evidence - whether directly, by inference, or by logic - can be refuted." United States v. Jackson, 327 F.3d 273, 293 (4th Cir. 2003).

Collins' testimony that the Navy Federal Credit Union gave him a $15,000 loan to purchase a car implicitly provided an explanation unrelated to drug sales for his possession of $750 on the night of his arrest. To rebut Collins' explanation for the loan and his possession of the money, the Government first offered the testimony of a Navy Federal Credit Union employee who testified that Collins lied on his loan application regarding his place and length of employment and monthly salary. The Government then called DEA Agent Pompa who offered his expert opinion that, based on Collins' testimony, the $10,000 that Sherley White possessed after Collins' arrest was consistent with the common practice of fronting drugs, in which a drug supplier gives drugs to a dealer with the expectation of later repayment. Because the testimony of

these two witnesses was relevant to explain, repel, counteract, or disprove Collins' explanation for the $15,000 loan and his possession of the $750, the district court did not abuse its discretion in admitting the testimony.

Accordingly, we affirm the judgment of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED