**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 08-4310**

─────────────

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

RICHARD MORRIS,

                Defendant - Appellant.

─────────────

Appeal from the United States District Court for the District of Maryland, at Baltimore.    Richard D. Bennett, District Judge. (1:07-cr-00321-RDB-1)

─────────────

Submitted:  October 17, 2008        Decided:  January 12, 2009

─────────────

Before MICHAEL and SHEDD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

James Wyda, Federal Public Defender, Denise C. Barrett, Assistant Federal Public Defender, Baltimore, Maryland, for Appellant.  Rod J. Rosenstein, United States Attorney, A. David Copperthite, Assistant United States Attorney, Baltimore, Maryland, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Richard Morris was charged in a one count indictment with possession with intent to distribute 50 grams or more of a mixture or substance containing cocaine base and a mixture or substance containing a detectable amount of marijuana. Morris subsequently filed a motion to suppress his incriminating statements and evidence seized from his home and two vehicles. The district court denied Morris' motion, finding that the police had a reasonable articulable suspicion to seize Morris, and therefore, the search of his BMW and the later searches of his home and Lexus were constitutional. Morris then entered a conditional guilty plea, reserving his right to appeal the district court's order denying his suppression motion. The district court sentenced Morris to 240 months' imprisonment. Morris timely noted his appeal and argues the district court erred in denying his motion to suppress as the officers lacked reasonable, articulable suspicion to seize him. We affirm.

The Fourth Amendment protects citizens from "unreasonable searches and seizures by the government, and its protections extend to brief investigatory stops . . . that fall short of traditional arrest." United States v. Arvizu, 534 U.S. 266, 273 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 9 (1968) (internal quotation marks omitted)). In the context of investigatory detentions, the Supreme Court has held that, consistent with the Fourth Amendment,

2

police officers may conduct an investigatory stop if officers have reasonable suspicion that criminal activity may be afoot.  Terry, 392 U.S. at 31; see Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Such an investigatory stop must be based on "at least a minimal level of objective justification" but the standard for reasonable suspicion is less demanding than for probable cause.  Wardlow, 528 U.S. at 123.

In assessing whether officers had a reasonable suspicion of criminal activity, this court must consider the totality of the circumstances surrounding the seizure.  United States v. Sprinkle, 106 F.3d 613, 618 (4th Cir. 1997)(quoting United States v. Sokolow, 490 U.S. 1 (1989) (internal quotations omitted)).  "Reasonable suspicion is a commonsensical proposition.  Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the streets."  United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993).

To establish reasonable articulable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch.  Sokolow, 490 U.S. at 7 (quoting Terry, 392 U.S. at 27) (internal quotations omitted)). However, reasonable articulable suspicion may be established by a series of acts, each of them perhaps innocent when viewed separately, but when viewed in the aggregate by a trained police officer warrant further investigation.  See id. at 9-10 (quoting

3

<u>Terry</u>, 392 U.S. at 22). In assessing whether reasonable suspicion existed, the facts, whether seemingly innocent or obviously incriminating, are to "be assessed in light of their effect on the respective officer's perception of the situation at hand." <u>United States v. McCoy</u>, 513 F.3d 405, 414 (4th Cir. 2008). Even when each fact alone may be susceptible of an innocent explanation, "the question is whether taken together they are sufficient to form a particularized and objective basis for an officer's suspicions." <u>United States v. Black</u>, 525 F.3d 359, 365-66 (4th Cir. 2008) (citing <u>Arvizu</u>, 534 U.S. at 277) (internal quotation marks omitted)).

Here, when the officers seized Morris, they had reasonable, articulable suspicion that he was engaged or about to engage in a drug transaction. The officers were in a high crime area known for narcotics activity. The officers observed Morris but believed he was his brother, Weldon Pendleton, whom the officers had arrested previously in that vicinity for narcotics dealing.* Although Morris stopped at a gas station and appeared to enter the gas station convenience store, he purchased neither gas nor any items from the store. He was, however, talking on a cell phone. After leaving the store, Morris met up with a young man, who was talking on a cell phone, who had come running across the

---

* Morris and Pendleton are apparently so similar in appearance that the district court, in looking at photos of the two men, believed at first they were twins.

4

parking lot from the other side of the street. The two men spoke for a minute, looked in the officers' direction, and then walked back into the store and out of the officers' line of sight. Both men then emerged from the store, got into the BMW and left.

However, Morris did not leave the area but executed a series of right hand turns and pulled back into the gas station parking lot one to two minutes after first leaving the lot. Detective Campbell testified that he became suspicious of Morris from the moment he first emerged from the convenience store and met up with the young man because, during his nine years working in various drug units, he had observed drug transactions occur in similar situations. His suspicions were heightened by Morris' driving behavior as he had also observed similar activity in the past, which indicated to him a drug deal was occurring in the BMW. Accordingly, when Detective Brooks seized Morris by ordering him at gunpoint to get back into the BMW, he did so only after the officers developed reasonable suspicion that Morris was involved in a drug transaction. See United States v. Mendenhall, 446 U.S. 544, 553 (1980); California v. Hodari D., 499 U.S. 621, 626 (1991).

Based on the facts by the district court, we affirm the order denying Morris' motion to suppress. We dispense with oral argument because the facts and legal contentions of the parties are

5

adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED